## Case No. 16,314.

### UNITED STATES v. SMALL.

#### [2 Curt. 241.] 1

Circuit Court, D. Massachusetts.   May, 1855.

SEAMEN—STOWAWAY—ASSAULT WITH DANGEROUS WEAPON—PROVINCE OF JURY.

1. One who secretes himself on board a vessel before sailing and discovers himself after the vessel is at sea, is not one of the crew, though the master requires him to work, as a condition for his having food, and he does work.

2. Whether an assault was with a dangerous weapon, or not, may depend upon matter of fact, as upon the manner of the assault; and in such case, the court cannot declare, as matter of law, that the assault, if committed with a belaying pin, was with a dangerous weapon. The question must be left to the jury.

[Cited in U. S. v. Williams, 2 Fed. 64.]

[Cited in State v. Collyer (Nev.) 30 Pac. 896; State v. Lang, 65 N. H. 286, 23 Atl. 433. Cited in brief in U. S. v. Green, 6 Mackey, 566.]

3. The danger referred to is danger to life.

This was an indictment against [Sanford Small] the mate of the ship Tigress for beating and wounding James Sweeney, one of the crew. There was also a count for an assault with a dangerous weapon. It appeared that Sweeney went on board the Tigress while lying at New Orleans, without the knowledge of the master, or either of the officers; and there concealed himself until after the ship was at sea, bound for Boston. He then discovered himself, and the master ordered the mate to set him to work in tarring some of the rigging. While so employed, he neglected his work, and was insolent to the mate, who took up a belaying pin and struck at him and hit him on the arm. The blow did not appear to have been heavy, and no serious injury was inflicted.

Mr. Hallett, U. S. Dist. Atty.
J. H. Prince, for defendant.

CURTIS, Circuit Justice. To sustain the first count under the third section of the act

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

of congress of March 3, 1835, (4 Stat. 776), it is necessary for the government to prove that Sweeney was one of the crew of the Tigris. Upon the facts, which are admitted, my opinion is, he was not one of the crew. He was not on board under any contract to serve as a seaman, nor was he in fact a seaman. His presence there was a fraud, and if the master, from motives of humanity, chose to feed him, and at the same time, as a condition for his having food, required him to do such work as he was capable of doing, and he chose to work in order to get food, this did not amount to a contract of hiring him as one of the crew. This count in the indictment, therefore, is not supported.

But whether one of the crew or not, if the mate assaulted him with a dangerous weapon, he is guilty of an offence under another act of congress of March 3, 1825, § 22 (4 Stat. 121). It is of the substance of this offence, that the assault be with a dangerous weapon. I am not aware that the words "dangerous weapon" in this act of congress, have received an interpretation. I think the damage referred to is danger to life. The offence intended to be described, appears from the punishment prescribed, to be a very serious one. The punishment is of the same duration, as for manslaughter. Act April 30, 1790, § 12 (1 Stat. 115). And the fact that the assault is with a dangerous weapon, is classed by the law, with an assault with an intent to kill; for an assault with a dangerous weapon, and an assault with an intent to kill, each amounts to the offence punished by this act. You will consider that, to support this count, the assault must be with a weapon dangerous to life. I think, also, that as actually used, the weapon must have been dangerous to life. Thus a small pistol, when loaded, is undoubtedly a dangerous weapon; and if pointed towards a person within striking distance, with a present intention of discharging it, an assault with a dangerous weapon is committed. But if not loaded, and used only to push, or strike with, a small pistol could not be considered a weapon dangerous to life. So the thing said to be used by the defendant may, in the hand of a strong man, be capable of endangering life by a blow on the head; but not dangerous to life, if the arm or leg be struck with it. And if it be so, then an assault on a person, by striking at, or attempting to strike at his head with this instrument, being within striking distance, would be an assault with a dangerous weapon; while an attempt to strike his arm with it, would not be such an assault. In many cases it is practicable for the court to declare, that a particular weapon was, or was not, a dangerous weapon, within the meaning of the law. And when it is practicable, it is matter of law, and the court must take the responsibility of so declaring.

U. S. v. Wilson [Case No. 16,730]. But where the question is whether an assault with a dangerous weapon has been proved, and the weapon might be dangerous to life, or not, according to the manner in which it was used, or according to the part of the body attempted to be struck, I think a more general direction must be given to the jury; and it must be left for them to decide whether the assault, if committed, was with a dangerous weapon. Rex v. Noakes, 5 Car. & P. 326. My instruction to you is this,—if the blow, as struck, or as intended to be struck by the defendant, with this weapon, could put the life of the prosecutor in danger, then it was an assault with a dangerous weapon. It was such an assault, if a blow with it on the head would be dangerous to life, and the prisoner being within striking distance attempted to, or did strike at the head of the prosecutor. But if a blow, with this weapon, upon the arm, could not endanger life, and the prisoner's only purpose and act was to strike the prosecutor's arm, then it was not an assault with a dangerous weapon.

Verdict, not guilty.